UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY  DIVISION

| | | |
|---|---|---|
| AMERICAN COMMERCIAL LINES, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 4:08-cv-96-SEB-WGH |
| NORTHEAST MARITIME INSTITUTE, INC., | ) ) ) | |
| Defendant. | ) ) | |

## ORDER ADDRESSING PENDING MOTIONS

This cause is before the Court on the Motion for Preliminary Injunction [Docket No. 10] filed by Plaintiff, American Commercial Lines, LLC ("American"), on July 7, 2008, pursuant to Federal Rule of Civil Procedure 65; the Motion to Dismiss for Lack of Personal Jurisdiction or for Change of Venue [Docket No. 18], filed on July 16, 2008 by Defendant, Northeast Maritime Institute, Inc. ("NMI"); and the Motion for Oral Argument [Docket No. 29], filed by NMI on July 17, 2008.  American requests that the Court order NMI to return property belonging to American that NMI has in its possession and to release former NMI students' transcripts relating to course work the students completed at the school run by NMI.  NMI argues that the Court does not have personal jurisdiction over the claim, and, alternatively, that the Court should transfer the cause to the District of Massachusetts because it is the more convenient forum for the litigation.

For the reasons detailed in this entry, we <u>DENY</u> Defendant's Motion to Dismiss, <u>DENY</u> Defendant's Motion for Change of Venue, <u>DENY</u> Defendant's Motion for Oral Argument, and <u>GRANT</u> in part and <u>DENY</u> in part Plaintiff's Motion for Preliminary Injunction.

### ***Factual Background***

Plaintiff, American, is a limited liability corporation formed under the laws of Delaware with its principal place of business in Indiana. American is a large marine transport company that provides barge transportation on inland waterways throughout the United States. Defendant, NMI, is a family-owned, Massachusetts close corporation with its principal place of business in Fairhaven, Massachusetts. NMI operates a school in Massachusetts, where the company offers courses for training students in maritime careers, including river boat piloting.

In 2005, executives of the predecessor to American[1] contacted NMI about the possibility of engaging NMI's training services. Over the course of the months that followed, executives and employees of both companies made trips back and forth between Massachusetts and Indiana to develop a business relationship and work toward a binding agreement. In March 2006, American and NMI entered into a contract under which NMI was to train American employees to be river pilots. That contract was later

---

[1]American Commercial Barge Line, LLC.

modified by agreement in January 2007.  Although the contract contains no forum selection clause, it does contain a choice-of-law clause, which states that the agreement is to be interpreted under and governed by Indiana law.

The agreement was to remain in full force and effect until March 2011, but in June 2008, American discovered that its manager, Kenneth Davidson, who had been responsible for negotiating the financial terms of the contract, had been secretly working for NMI.  American represents that it has just begun to investigate this situation, but that, to date, it has uncovered documentation showing that Mr. Davidson: (1) sent confidential information to NMI about American's acquisition targets; (2) identified himself to a South American company as "President of NMI Human Factors USA"; (3) attempted to negotiate a contract on behalf of NMI with this same South American company; and (4) approved invoices from NMI totaling in excess of $1.3 million in "tuition charges" for American students relating to courses that were never taught by NMI or attended by employees of American.

Because of these alleged acts, American terminated its agreement with NMI and, on June 20, 2008, filed the original complaint in this case in the Southern District of Indiana, asserting numerous unfair business practices.  On June 25, 2008, in response to American's termination of the agreement, NMI filed a separate suit against American in Massachusetts Superior Court seeking injunctive relief and alleging breach of contract and unfair business conduct.  American removed NMI's state case to the U.S. District Court for the District of Massachusetts on June 30, 2008.

On July 7, 2008, American filed a motion to change venue from the District of Massachusetts to the Southern District of Indiana. That same day, American filed a motion in this court for a preliminary injunction against NMI. In response, on July 31, 2008, NMI filed a Motion to Dismiss for Lack of Personal Jurisdiction or for Change of Venue of the cause before us.

Since the filing of NMI's Motion to Dismiss or for Change of Venue, Judge Richard G. Stearns of the U.S. District Court for the District of Massachusetts granted American's Motion to Transfer NMI's suit against American from the District of Massachusetts to the Southern District of Indiana. Judge Stearns based his ruling on the fact that American was the first party to file its lawsuit in the present dispute. He granted the motion on July 22, 2008, and shortly thereafter, on July 30, 2008, Magistrate Judge William G. Hussman of the Southern District of Indiana consolidated the two cases. For at least the time being, therefore, the case reposes with this Court, confronting us with two general issues: (1) where, under the laws of personal jurisdiction and venue, may or should this case be tried; and (2) if it may and should be tried here, whether American has demonstrated entitlement to an injunction against NMI. We address these questions in turn below.

## _Legal Analysis_

### I.  _Personal Jurisdiction_

In a diversity action filed under 28 U.S.C. §1332, a federal district court has

4

personal jurisdiction over a non-resident defendant "only if a court of the state in which it sits would have such jurisdiction."  Purdue Reseach Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 779 (7th Cir. 2003).  A district court may properly exercise personal jurisdiction over a non-resident defendant if a two-step analysis is undertaken and satisfied.  First, the party resisting the exercise of jurisdiction must be amenable to service of process under the state's long-arm statute; second, the exercise of personal jurisdiction must comport with the due process clause of the Constitution.  Id.  Indiana's long-arm statute, Indiana Rule of Trial Procedure 4.4(a), "expand[s] personal jurisdiction to the full extent permitted by the Due Process Clause."  LinkAmerica Corp. v. Albert, 857 N.E.2d 961, 966 (Ind. 2006).  Thus, the sole question before us is whether due process would be offended were we to exercise personal jurisdiction over NMI.

For a court to acquire personal jurisdiction over a defendant, due process requires "that the defendant have such 'minimum contacts' with the forum state as will make the assertion of jurisdiction over him consistent with 'traditional notions of fair play and substantial justice[.]'"  Lakeside Bridge & Steel Co. v. Mountain State Const. Co., 597 F.2d 596, 600 (7th Cir. 1979) (quoting International Shoe v. Washington, 326 U.S. 310, 316 (1945)).  In other words, a defendant must have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)).

Personal jurisdiction may be either specific or general.  A court may exercise

specific jurisdiction over a defendant if the cause of action arises out of or relates to a defendant's purposefully established contacts with the forum state.  <u>Helicopteros Nacionals de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984); <u>Burger King Corp.</u>, 471 U.S. at 472.  General jurisdiction, on the other hand, "is proper when a defendant has 'continuous and systematic business contacts' with a state, and it allows a defendant to be sued in that state regardless of the subject matter of the lawsuit." <u>Premiere Credit of North America, LLC v. AAT Fabrication, Inc.</u>, 2005 WL 1123636, at *2 (S.D. Ind. 2005), citing <u>Helicopteros</u>, 466 U.S. at 416; <u>see also</u> <u>Hyatt Int'l Corp. v. Coco</u>, 302 F.3d 707, 713 (7th Cir.2002); <u>RAR, Inc. v. Turner Diesel, Ltd.</u>, 107 F.3d 1272, 1277 (7th Cir.1997).

Based on the information before us, it is clear that the Court does not have general jurisdiction over NMI.  The focus of our analysis is therefore on specific personal jurisdiction, an analysis that "is fact-specific and determined on a case-by-case basis." <u>Brockman v. Kravic</u>, 779 N.E.2d 1250, 1256 (Ind.App.Ct. 2002).  The jurisdiction question here stems from the events surrounding the formation and performance of the parties' contract.  Conceding that contract was executed in Indiana, NMI nonetheless argues that a contract alone does not establish the minimum contacts necessary to satisfy due process.  Furthermore, NMI argues that any additional contacts were the result of American's solicitation, contending specifically that its "only real contact with Indiana was limited to four visits - one pre-contract appearance at the . . . invitation of [American] and the others more for convenience to [American] than necessity to NMI."  Def.'s Br. in Supp. at 8.  Finally, according to NMI, performance of the contract took place in

Massachusetts, not in Indiana.  Id.  For all of these reasons, NMI asserts that it would be improper for the Court to exercise specific jurisdiction over the company in this case.

American responds that in determining the adequacy of minimum contacts the Court should focus on whether the "defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, . . . [thus availing] himself of the privilege of conducting business there."  Pl.'s Response at 3 (quoting Burger King 471 U.S. at 475).  According to American, this is exactly what NMI has done: it has deliberately engaged in activities in Indiana so that it could conduct business with its largest-ever customer.  American contends that "NMI subjected itself to the reach of Indiana's long arm statute when it freely and voluntarily engaged in negotiations and contractual activities with" an Indiana business.  Pl.'s Response at 4.  As American sees it, in addition to executing a contract in Indiana, employees of NMI visited American's Indiana operations four times to negotiate the contract and to further develop the business relationship.  American cites Deluxe Ice Crem Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1215-16 (7th Cir. 1984), for the proposition that negotiations leading to the creation of a contract, if undertaken in the forum state, are sufficient to establish personal jurisdiction.  Finally, American adds to the list of contacts between NMI and Indiana numerous email and telephone communications directed into Indiana in furtherance of the contract, which further enhance the assertion of jurisdiction in Indiana.  See Freemond v. Somma, 611 N.E.2d 684, 690 (Ind.Ct.App. 1993).

A recent Seventh Circuit case guides our analysis of the question presented by the parties' arguments.  In <u>Citadel Group Limited v. Washington Regional Medical Center</u>, 536 F.3d 757 (7th Cir. 2008), the Seventh Circuit assessed the exercise of specific personal jurisdiction over a defendant whose primary connection with the forum state was its contract with the plaintiff, a resident of that state.  Emphasizing that the contract involved a continuing obligation and continuing contacts with the forum-based company and that the contract was for a continuing service rather than a discrete set of goods to be sent into the forum, the court found that exercising personal jurisdiction was proper.  <u>Id.</u> at 763.  According to the <u>Citadel</u> Court, "[w]hile the formation of the contract alone is not sufficient to confer personal jurisdiction on [a defendant,] the parties had continuing obligations and repeated contacts" that sufficed for personal jurisdiction.  <u>Id.</u>  "At some point, a party's contacts must cross the threshold from offending due process to sufficient minimum contacts," and in <u>Citadel</u>, the defendant's contacts crossed that threshold.  <u>Id.</u>

In our view, the ongoing nature of the interstate business relationship is key to the minimum contacts analysis.  As <u>Citadel</u> emphasized, the boundary of personal jurisdiction is crossed when the defendant "should have reasonably anticipated being haled into court" in the forum, because "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."  <u>Id.</u> (quoting <u>Burger King</u>, 471 U.S. at 474).

NMI has voluntarily assumed interstate contractual obligations, and in so doing it has availed itself of a great financial benefit - business with its largest customer - that was

8

only available to NMI in Indiana.  We are convinced that the ongoing nature of the services rendered by NMI and the contacts it developed in that regard with the forum - including numerous communications - easily fit the facts of this case into the rule of <u>Citadel</u>.  We further rely on the fact that the negotiations that led to the agreement underlying this cause, and the business misconduct at the center of American's claim, occurred largely in Indiana.[2]  These considerations, taken together with NMI's voluntary attainment of a great financial benefit in Indiana, lead us to conclude that the minimum contacts here have crossed the threshold so as not to offend due process.  Thus, we hold that the Court's exercise of personal jurisdiction is proper in this case.

## II. Venue

As an alternative to its Motion to Dismiss for lack of personal jurisdiction, NMI also has moved for a Change of Venue, pursuant to 28 U.S.C. §1404, to the District of Massachusetts "because Massachusetts is where this cause of action arose, where the contract was performed, where NMI has its place of business and keeps its records, and where most of the anticipated witnesses to the facts alleged in the Complaint are located." Def.'s Br. in Supp. at 9.  Title 28, United States Code Section 1404(a) states in pertinent part: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been

---

[2]<u>Deluxe Ice Ceam</u> is not alone in espousing this position.  <u>See, e.g.</u>, <u>Nieman v. Rudolf Wolff & Co., Ltd.</u>, 619 F.2d 1189, 1193 (7th Cir. 1980).

brought."[3]

It is important to avoid conflating this standard with the old *forum non conveniens* standard, a common law principle that predated the passage of §1404.[4] While the common law principle informs the statutory rule, §1404 presents an easier mode of transfer and is the proper standard to apply when both possible fora are in the United States. See American Dredging Co. v. Miller, 510 U.S. 443, 449 (1994) (holding that *forum non conveniens*, the more rigorous standard, is appropriate for international, and not interstate, transfers); see also Piper Aircraft Company v. Reyno, 454 U.S. 235 (1981) (discouraging analogies between *forum non conveniens* and §1404); U.S.O. Corp. v. Mizuho Holding Company, et al., No. 07-3588 (7th Cir. Oct. 28, 2008) (applying *forum non conveniens* to an international dispute).

Much is left to the Court's discretion in assessing the need for a change of venue. General Foods Corp. v. Carnation Co., 411 F.2d 528 (7th Cir. 1969). Consequently, most courts entertain a wide variety of factors when applying §1404. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 n.3 (7th Cir. 1986). Often, courts consider factors separated into two categories, public and private. Private factors include the following: the

---

[3]This motion for change of venue is properly under §1404 of the statute, rather than §1406, because, although Massachusetts may (or may not) be a better venue for the case, the Southern District of Indiana is also a proper venue. See 28 U.S.C. §1406(a).

[4]Rightly asserting that the *forum non conveniens* standard is a higher one than the statutory standard, NMI argues only the *forum non conveniens* analysis, implying that if the facts of this case meet that higher standard then they must meet the lower one of §1404. This is too loose an analytical tack, and it comes dangerously close to conflating the two standards. We therefore confine our analysis to the statute and cases interpreting it.

plaintiff's choice of forum, the defendant's choice of forum, where the claim arose, convenience to the parties, convenience to witnesses, and ease of access to the sources of proof.  Public factors include: the transferee forum's familiarity with the governing law, the congestion in the alternative courts, and the local interest in deciding local controversies at home.  See Berenson v. National Financial Servs., LLC, 319 F.Supp.2d 1 (D.D.C. 2004); see also Widen v. Advance Group Inc., 2004 WL 816410 (N.D. Ill. 2004). In reviewing these factors, both public and private, we conclude that the most important ones in the case at bar are Plaintiff's choice, convenience, and court familiarity with the applicable law.

### A.  Plaintiff's Choice of Forum

A plaintiff's choice of forum should not be disregarded lightly.  District courts in this circuit have indicated a "strong preference" for a plaintiff's forum choice.  Hinc v. Lime-O-Sol Co., 231 F.Supp.2d 795 (N.D. Ill. 2002); Cumis Ins. Soc. Inc. v. South-Coast Bank, 587 F.Supp. 339, 348 (N.D. Ind. 1984).  In Cumis, a California company, the defendant, sought a transfer of venue on convenience grounds.  The court noted that this would merely shift the inconvenience from one company, the defendant, to the other company (an Indiana company), the plaintiff.  Citing deference to the plaintiff's forum choice, the court denied the motion to change venue.  Cumis, 587 F.Supp. 339, 348. When a plaintiff's forum choice does not represent the primary site of material events, however, that choice is entitled to less deference.  First Nat. Bank v. El Camino

11

Resources, Ltd, 447 F.Supp.2d 902, 912-13 (N.D. Ill. 2006).  In the case at bar, which also involves two companies, American has chosen Indiana as the forum, to which choice we give respect.  Although Indiana is not the site of all of the material events in this case, it is the site of the development of the business relationship as well as much of the business misconduct American alleges in its complaint.  Thus, American's choice of Indiana as the forum weighs against NMI's motion to change venue.


*B. Convenience*

    Another factor we consider is the convenience of the parties.  This factor is the first mentioned in §1404, and it is relevant in the case at bar because of the financial impact litigation inconvenience may have on the parties.  Relative financial impact - when litigation would effect more hardship on one party than another - is a common part of convenience analysis.  In SRAM Corp. v. SunRace Roots Enterprise Co., Ltd., 953 F.Supp. 257 (N.D. Ill. 1997), convenience weighed in favor of a transfer from Illinois to California, when the Illinois manufacturer (the plaintiff) was a large international company and the defendant was a small California-based business with only a handful of employees. See also Muzzarelli v. Landry's Restaurants, Inc., 2003 WL 1720065 (N.D. Ill. 2003) ("It is clear that Defendant, as a national corporation doing business in this jurisdiction, is in a better position to bear the expense of trial in Illinois than the Plaintiff could bear the expense of trial in Florida.").  In the present case, American is one of the largest transportation companies in the United States, while NMI is a much smaller

business.  Applying this factor is not merely a type of balance sheet calculation.  NMI has a small number of employees, and, if some of them are required to travel to Indiana for litigation, a significant part of NMI's business operations will be interrupted and may become idle.  See Def.'s Reply at 3.  In other words, litigation in Indiana may effect a significant hardship on NMI's business.  Therefore, because American is better equipped to litigate in Massachusetts while continuing its regular business than is NMI in Indiana, the convenience of the parties weighs in favor of granting NMI's motion.

More important than convenience to the parties, however, is consideration of any potential convenience or inconvenience to non-party witnesses.  This factor is often deemed the "most important factor in the transfer balance,"  Rose v. Franchetti, 713 F.Supp. 1203 (N.D. Ill. 1989), and only a specific discussion of the convenience of witnesses who will probably produce live testimony at trial is relevant.  See Distance Learning Sys. Indiana, Inc. v. A & D Nursing Institute, Inc., 2005 WL 775928 (S.D. Ind. 2005); see also Aldridge v. Forest River, Inc., 436 F.Supp.2d 989 (N.D. Ill. 2006).  NMI names Eric Dawicki specifically and includes references to its "key employees" and "both of its top executives."  Def.'s Br. in Supp. at 12.  This identification of witnesses is fairly specific, although NMI's argument is less convincing because of its failure to specify the inconvenience that will be experienced, especially by non-party witnesses.  As American contends, the substantial burden claimed by Dawicki is overstated because of his paripatetic lifestyle generally, as evidenced by the fact that he owns flats in London and Washington, DC, and is quite capable of traveling to Indiana for a trial.  Furthermore,

NMI's argument is seriously undercut by the fact that its witnesses are employees of that company, and not technically non-party witnesses.  This fact significantly decreases the weight given to their claimed inconvenience.  DEV Industries, Inc. V. NPC, Inc., 763 F.Supp. 313, 315 (N.D. Ill. 1991); Buztronics, Inc. v. Theory3, Inc., 2005 WL 1113873 (S.D. Ind. May 9, 2005).  Therefore, although normally a crucial factor, we hold here that convenience to these witnesses is not a significant reason for transferring the case at bar.

*C.  Court Familiarity with Applicable Law*

The choice-of-law clause contained in the contract also weighs on the venue decision.  The clause states, "The parties agree that this Agreement shall be governed by and interpreted under the laws of the State of Indiana."  See Pl.'s Complaint.  Although it is not a forum selection clause, which would hold very significant weight in our transfer decision, Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991), the existence of a choice-of-law clause is important because it clarifies that the transferee court is "obligated to apply the state law that would have been applied if there had been no change of venue."  National Hydro Systems, a Div. Of McNish Corp. v. Summit Constructors, 731 F.Supp. 264, 267 (N.D. Ill. 1989) (quoting Van Dusen v. Barrack, 376 U.S. 612, 639 (1964)).  Judges in the District of Massachusetts "are certainly competent to apply Indiana law, but 'the familiarity of this court with applicable Indiana law is a factor to be taken into consideration that weighs at least slightly toward denial of transfer."  Whitney v. Big Dog Holdings, Inc., 2007 WL 3334503, at *6 (S.D. Ind. November 7, 2007)

14

(internal citations omitted).

Finally, we address "the interest of justice," which has been called "a crucial factor." Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989). Some courts have even stated that the interest of justice "outweighs all other factors." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220-21 (7th Cir. 1986). The interest of justice is a broad concept, encompassing a variety of considerations, many of which we have already discussed. In this case, the most relevant "interest of justice" concern is drawn out of the choice-of-law clause. The Supreme Court has stated that the "interest of justice" is best served when court efficiency is served, specifically when a court most familiar with the law to be applied is able to oversee the case. Van Dusen, 376 U.S. at 645. Because Indiana law will apply here, the interest of justice is served by the maintenance of the case in this forum. Therefore, we conclude that the "interest of justice" is a substantial factor weighing against granting the motion to change venue.

*D. Conclusion*

Placing all of these §1404 considerations - Plaintiff's choice and court familiarity with applicable law, which weigh heavily against granting NMI's motion, and convenience, which weighs only somewhat in favor of granting the motion - on the balance, we are unconvinced of the need to transfer the litigation to the District of

Massachusetts.[5]

### III.  American's Motion for Preliminary Injunction

The injunctive relief American seeks is two-fold: (1) to have the property that it loaned NMI for training purposes (computers, training tapes, and Zodiac boats) returned; and (2) to obtain for its students/employees their transcripts from NMI so that they can receive credit for the classes they have taken in order to continue their education elsewhere.  In a recent articulation of the preliminary injunction standard, the Seventh Circuit stated that

> [t]o prevail on a motion for a preliminary injunction, the moving party must demonstrate (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm [that] will result if the injunction is not granted.  If the moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party.

Woods v. Buss, 496 F.3d 620, 622 (7th Cir. 2007) (citations omitted).  We find that

---

[5]We peripherally dispense with an argument raised in the briefing of the venue issue: issue preclusion.  American argues that because "one federal court has already decided the question of where this dispute should be litigated . . . further review of this issue should be precluded."  Pl.'s Response at 8; see also Gentry v. Duckworth, 65 F.3d 555, 560 (7th Cir. 1995).  As the substance of Judge Stearns's opinion shows, however, this is not a situation that qualifies for issue preclusion because the issues are not the same.  The only issue Judge Stearns relied upon in granting American's motion to transfer was the application of the first-to-file rule: "The court is aware that first-to-file rule may not apply where convenience favors the second forum or where there are 'special circumstances' justifying priority of the second forum."  It is therefore clear that he did not render a final decision on the issue of convenience and based his decision only on the issue of who filed first.  Thus, issue preclusion does not apply to bar the Court from rendering a decision on NMI's Motion for Change of Venue.

American has made a sufficient showing for the Court to grant the first, but not the second, requested relief.

## A.  Likelihood of Success on the Merits

American must first show a likelihood of success on the merits.  The threshold for this showing is low: "It is enough that the plaintiff's chances are better than negligible." Roland Machine Co. v. Dresser Indus., Inc., 749 F.2d 380, 387 (7th Cir. 1984).  The merits here refer to American's claim of business misconduct resulting from its former manager's double-dealing with NMI, as well as the contract breach claim arising out of American's premature termination of the parties' agreement.  American has gathered substantial evidence of NMI's misconduct, including emails between the former manager, Ken Davidson, and NMI's president, which, if accurate, indicate a potentially serious collusive relationship.  See Pl.'s Br. in Supp. at 5.  Other evidence shows that the former manager even negotiated contracts on behalf of NMI, acting as "President NMI Services Human Factors USA," while he was working for American.  In its briefing, NMI never addresses any aspect of this alleged misconduct.  Thus, the showing that American has made thus far regarding Davidson's conduct and NMI's purposeful fostering of that conduct presents a convincing case for American under the standard for likelihood of success on the merits.[6]

---

[6]In addition to advancing a claim for breach and misconduct, American also points to the
(continued...)

Because the alleged misconduct goes to the formation, performance, and termination of the American-NMI contract, the case understandably includes a contract dispute as well.  NMI argues that American is at fault for terminating the contract, while American argues that NMI is at fault for destroying their contractual relationship through business misconduct.  More specifically, NMI argues that American breached the parties' agreement on June 10, 2008, when it notified NMI without warning that it was terminating the contract between the parties.  Def.'s Response at 1.  Citing a provision in the contract mandating ninety days' notice prior to a termination, NMI urges that American's claim is significantly weakened by its own clear breach.  Id.  Although NMI's argument may become more convincing as the case unfolds more completely, we need not reject it entirely in concluding on the facts and arguments submitted thus far that American has a more-than-negligible likelihood of success on the merits.  We find that the misconduct American alleges and the relationship between that misconduct and the termination of the contract make it clear enough that American has a nontrivial likelihood of success on the merits of this case.

Before turning to the other two elements of the injunction standard, we address

---

[6](...continued)
law of agency as one foundation for its claim: "It is a fundamental principle of agency law that agents owe fiduciary duties of loyalty to their principals not to (1) actively exploit their positions within the corporation for their own personal benefits; or (2) hinder the ability of the corporation to conduct the business for which it was developed."  Foodcom Intern. v. Barry, 328 F.3d 300, 303 (7th Cir. 2003).  Although NMI is, of course, not the agent of American, it is American's contention that NMI was knowingly complicit in the illegal acts which were performed on NMI's behalf; thus, the claim is against NMI as well as the original agent, Davidson.

two arguments NMI advances against injunctive relief that are not directly about the

merits of American's underlying claim: first, that the transcripts American seeks do not

belong to American but rather to its employees; and second, that American's preliminary

injunction request should be rejected because "NMI is prepared to perform the parties'

agreements."  Def.'s Response at 2, 4.  The latter argument is unconvincing because of

the fact that the agreement has been incurably tainted and is potentially unenforceable at

this point.

    NMI's ownership argument, which seeks to exclude student transcripts from the

materials to be relinquished, is more convincing.[7]  According to NMI, divulging the

transcripts to American would constitute an "invasion" of the employees' privacy.

Employees enjoy some level of privacy from searches by their employers, although they

must demonstrate a protectable expectation of privacy and an offensive invasion of that

privacy.  See Hoth v. American States Ins. Co., 735 F.Supp. 290 (N.D. Ill. 1990). Here,

the "invasion" NMI fears is of a non-governmental employer (American) obtaining the

work-related material (transcript from job-training school) of an employee and then

delivering that transcript to the employee.  We need not, however, render a decision on

the strength of NMI's argument on the weighty issue of "invasion of privacy."  NMI has

already demonstrated a policy of willingly giving transcripts to any students who request

them.  See Def.'s Response at 2.  Therefore, regarding the transcripts only, American has

---

[7]It is worthwhile to note that NMI cites no applicable law supporting its privacy
argument.

an alternative remedy that abrogates the need for an injunction.  Because NMI is willing

to cooperate by offering these transcripts directly to students, American can simply

encourage its employees to request them from NMI so that they may obtain their earned

credit, as American desires.  Should NMI refuse to provide them to American's students,

we assume the parties will return to the Court for further assistance/rulings.


*B.  Adequate Remedy at Law*

Returning to the elements of the injunction standard, we next address the question

of whether American has an adequate remedy at law for the alleged wrongs.  The

adequacy of available legal remedies entails a case-by-case determination.  <u>Harris Stanley</u>

<u>Coal & Land Co. v. Chesapeake & O. Ry. Co.</u>, 154 F.2d 450 (6 Cir. 1946), <u>cert. denied</u>

329 U.S. 761.  Moreover, legal remedies are inadequate if damages would be inadequate

to relieve the wrong.  <u>Hoellen v. Annunzio</u>, 468 F.2d 522 (7th Cir. 1972).  In this case,

damages are certainly part of the relief sought, but a crucial part of this case is the fact

that American and its employees have made significant efforts to certify numerous

individuals as river pilots.  This training cannot be replaced by monetary damages.  As we

already discussed, American's employees may retrieve their transcripts without necessity

of an order of injunctive relief.  However, American and its employees also depend on

numerous other materials held by NMI so that they may continue training and further

business operations, and no legal remedy beyond injunctive relief is available to enable

them to retrieve those materials.  Damages will not suffice as a substitute for these

essential materials.  Thus, the second element of the injunction standard is satisfied.


*C.  Irreparable Harm*

Often, as the present case illustrates, inadequacy of a remedy at law can be a reflection of the last element - that the plaintiff has suffered, and may continue to suffer, irreparable harm that can only be addressed with equitable relief.  Roland Mach. Co., 749 F.2d at 383.  NMI is in possession of a significant amount of American's property, including boats, computers, documents, and videos, all of which NMI was using to train American's employees.  It should be emphasized here that the materials we are discussing belong to and are the property of American, a fact which NMI does not dispute.  Now that the training relationship has deteriorated to the point of nonexistence, American needs those materials to train its employees and so that it can continue in the regular course of its business.  Therefore, American is continually harmed so long as NMI maintains possession of those materials.  Furthermore, if NMI does not return the materials now, it is possible that American will never retrieve them.  As American correctly argues, specific performance is unlikely even in the event that American wins the case.  Thus, without the injunction, the harm will be irreparable.  Having found the initial three elements satisfied, we now balance the harms that will be brought upon the parties by the requested injunction.

### D.  Balance of Potential Harms

NMI contends that it will be harmed if it is forced to turn over its own property, namely, any course materials that NMI has developed on its own.  Def.'s Response at 3. This is a fair argument, but it does not nullify American's position with regard to other materials.  In other words, American is entitled to retrieve from NMI only the materials belonging to American.  When balancing the harm that each party will suffer, we do not take into account the harm NMI might incur were it forced to turn over items *not* belonging to American; with that limitation, the balance of harms clearly favors American for the reasons set out in our earlier discussion of harm.  The harm that will come to NMI if it is forced to return only those items belonging to American is neither clear nor compelling.  However, we add this crucial distinction: the potential irreparable harm that could be brought upon NMI if an injunction forced it to divulge its confidential course materials would exceed the harm that would come to American if it is unable to obtain those limited materials.  Therefore, the injunctive relief authorized here is limited to those items previously belonging to American, including, as listed in the affidavit attached to American's motion, laptops, boats, trailers, and other such items, as well as any training materials originally loaned to NMI by American.

### E.  Security

Federal Rule of Civil Procedure 65(c) provides in relevant part that, "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant

gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. Pro. 65(c).  Under Seventh Circuit law, because "the amount of the security rests within the discretion of the district judge, the matter of requiring a security in the first instance [is] recognized . . . as also resting within the discretion of the district judge." Scherr v. Volpe, 466 F.2d 1027, 1035 (7th Cir. 1972) (holding that the district court did not abuse its discretion in failing to require the plaintiffs to post a security when the plaintiffs showed a strong likelihood of success on the merits).  Considering that American is alleged to have breached the contract in this case, in order to protect NMI from the potential of an irreparable wrongful loss, we find that American must provide a security, the amount of which we determine with relation to the value of the NMI Inventory American claims it originally loaned to NMI, to wit, approximately $125,000.[8] Therefore, the Court hereby sets the bond payable by American at $125,000, ten percent corporate surety.

## F.  Construction of the Injunction

The injunction entry and order is set forth in section VI below.  In constructing the injunction, we follow the guidance provided by the Seventh Circuit in Patriot Homes, Inc. v. Forest River Housing, Inc., 512 F.3d 412 (7th Cir. 2008):

---

[8]A list of this inventory is found in an affidavit attached to American's Brief in Support of its Motion for Preliminary Injunction.

Rule 65(d) of the Federal Rules of Civil Procedure requires that the injunction set forth the reasons for its issuance; . . . be specific in terms; . . . [and] describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. This requirement of specificity spares courts and litigants from struggling over an injunction's scope and meaning by informing those who are enjoined of the specific conduct regulated by the injunction and subject to contempt.

Id. (citations omitted). Thus, the order for injunctive relief specifies the materials included in the injunction, and the parties shall abide by the description in that order.

## IV. NMI's Motion for Oral Argument

In its motion for oral argument, NMI urges only that the request be granted so that the parties may "respond timely to any questions the Court may have which are raised by the motion." Def.'s Motion at 1. NMI continues, saying, "Defendant believes that oral argument will be helpful to the Court." Id. The record having been adequately developed through extensive briefing, we do not find that such a presentation by the parties is necessary.

## V. Conclusion

Having considered NMI's arguments regarding personal jurisdiction and change of venue, we find no compelling legal basis on which to dismiss or transfer the present litigation. Moreover, given the showings made thus far, including the evident harm being brought upon American by its ongoing loss of property, we find that a preliminary

24

injunction as to certain requested relief is necessary.  Thus, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or for Change of Venue is <u>DENIED</u>; Defendant's Motion for Oral Argument is <u>DENIED</u>; and Plaintiff's Motion for Preliminary Injunction is <u>GRANTED</u> in part and <u>DENIED</u> in part.

## VI.  Preliminary Injunction Entry and Order

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant is hereby ORDERED to do the following:

1.     Defendant, Northeast Maritime Institute, Inc. is hereby ORDERED to deliver to American Commercial Lines LLC all property belonging previously to American Commercial Lines LLC, including but not limited to: any and all laptop computers, zodiac boats, and trailers, as well as any and all other materials originally loaned or provided by American Commercial Lines LLC to Northeast Maritime Institute, Inc.  Northeast Maritime Institute, Inc. shall comply within ten (10) days of this Order and the posting of a bond by Plaintiff American Commercial Lines LLC.

The Court orders Plaintiff American Commercial Lines LLC to pay a bond of $125,000, ten percent corporate surety, within three business days of the entry of this Order.

"[I]nterlocutory appeals are possible from orders granting or denying injunctive relief."  <u>United States v. Fazzini</u>, 414 F.3d 695, 697 (7th Cir. 2005); 28 U.S.C. §1292(a)(1); Fed. R. App. Proc. 4(b)(1).  There being no cause for delay, this is a final

and appealable order.

This order shall remain in full force and effect until further order of the Court.

IT IS SO ORDERED.

Date:  __12/01/2008_____

_Sarah Evans Barker_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Phillip N. Beauregard
BEAUREGARD, BURKE & FRANCO
32 William Street
New Bedford, MA 02740

Paul J. Bishop
PHILLIPS PARKER ORBERSON & MOORE
pbishop@ppomlaw.com

Richard E. Burke Jr.
BEAUREGARD, BURKE & FRANCO
bbf.rburke@verizon.net

Sean F. Mcdonough
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

David R. Monohan
WOODWARD HOBSON & FULTON LLP
dmonohan@whf-law.com

R. Joseph Stennis Jr.
WOODWARD, HOBSON & FULTON, L.L.P.
jstennis@whf-law.com